IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-30073 |
| | ) | |
| PAUL KINCAID, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| STEVEN R. COLLINS, | ) | |
| | ) | |
| Third Party Respondent. | ) | |

OPINION

RICHARD MILLS, United States District Judge:

## I.     INTRODUCTION

The Government seeks to collect a portion of the restitution debt owed by

Defendant Paul Kincaid resulting from Kincaid's convictions for possession and

production of child pornography, pursuant to 18 U.S.C. §§ 2251 and 2252A(a)(5)(b).

In 2008, Kincaid was sentenced to 360 months in prison and $60,000 in

restitution.  In seeking to collect that debt, the Government sought to discover the

assets of Third Party Respondent Steven R. Collins, with whom Kincaid for a

number of years co-owned a personal residence and operated multiple businesses.

1

A house and real estate property located at 502 E. Union Street, Litchfield, Illinois, are at issue.

On November 24, 2015, the Court ordered that Mr. Collins turn over to the United States a total of $23,019.16. On March 28, 2017, the United States Court of Appeals for the Seventh Circuit vacated the Turnover Order and remanded this case for further proceedings. The Seventh Circuit determined that the Court erred in resolving factual disputes without holding an evidentiary hearing.

On remand, the Court was instructed to consider the following issues:

1. Third Party Respondent Steven R. Collins's right to an opportunity to be heard and present evidence;

2. The basis for a determination that Collins and Kincaid owned the house in question jointly and equally;

3. The value of the property at the time of the recorded 2006 quitclaim deed;

4. At the time Kincaid signed the 2006 quitclaim deed, whether Kincaid should have recognized that he would likely incur debts beyond his ability to pay.

*See United States v. Kincaid*, 681 F. App'x 498, 499-500 (7th Cir. 2017).

## II.    PROCEDURAL BACKGROUND

Following the remand, on March 30, 2017, the Court set a deadline for filing briefs and scheduled an evidentiary hearing for June 13, 2017 so that the parties could present evidence and the Court could resolve any factual disputes. *See* Ill. S. Ct. R. 277(e) (providing that "[a]ny interested party may subpoena witnesses and adduce evidence as upon the trial of any civil action").

The evidentiary hearing was rescheduled a number of times. On June 9, 2017, the Court granted Mr. Collins's motion to continue and reset the evidentiary hearing for August 15, 2017. In the same Order, Collins's motion for discovery was denied on the basis that discovery had been allowed in 2010 and 2011.

On June 12, 2017, at the Government's request, the hearing date was rescheduled for August 22, 2017.

On August 22, 2017, the Parties appeared at the hearing and the Government presented its evidence. Mr. Collins requested a continuance so he could obtain counsel. The Court granted Collins's request and the case was continued to October 24, 2017.

On October 17, 2017, Mr. Collins filed a motion to continue which was granted. The hearing was reset for December 12, 2017.

On November 21, 2017, the Government filed a motion to require Steven Collins to file a status report and provide documentation. On December 1, 2017, the

Court granted the Government's motion and directed Mr. Collins to file copies of the exhibits or documentation that he claimed in a previous filing significantly corroborates and supports his position.

On December 6, 2017, Mr. Collins filed a motion to file position statement/brief and reschedule hearing date. The motion stated that Collins had been under "constant and continued medical treatment" and was taking medication that "significantly impair [his] ability to concentrate on intellectual matters." The Court canceled the hearing set for December 12, 2017 and stated the hearing would be reset after Collins had provided evidence to the Court and counsel for the Government. The Court ordered Collins to provide the previously referenced discovery to the Government by December 19, 2017 and stated any position statement of Collins was due by January 31, 2018.

On December 15, 2017, Collins filed a motion to file documents with his position statement/brief which was not due until January 31, 2018. The motion provided Collins "is in no position to provide his documentary proofs in December. He still is not. This is to [sic] much to demand of him." Collins asserted "he has documents that prove up his position on the fair market value issue. But to require him to accelerate the process of developing his Position Statement/Brief to determine which documents prove up his argument the best is unjust."

On December 19, 2017, the Government objected to Collins's motion, stating that Collins had never provided the discovery that established the value of the real estate in question in his Position Statement/Brief. On December 21, 2017, the Court ordered Collins to turn over by January 3, 2018, the documentary evidence he claimed was in his possession which corroborated and supported his position regarding the fair market value of the real estate on the September 14, 2006 date of transfer.

On January 4, 2018, Mr. Collins filed a motion to reconsider, asking that the Court not require him to turn over the corroborating documentary evidence until he filed a position statement/brief. He claimed the documents were protected by the work product privilege. On January 24, 2018, the Court entered a Text Order granting the requested relief, allowing Collins to file copies of any documents which would be submitted at an evidentiary hearing with his position statement.

On January 29, 2018, Mr. Collins filed a motion for extension of time to file a position statement with exhibits. The Court granted the motion and extended the deadline to February 7, 2018. On February 7, 2018, Collins filed a position statement with exhibits.

On February 21, 2018, the Government filed a response to Collins's position statement. On April 4, 2018, the Court set the evidentiary hearing for May 10, 2018.

The Government requested a brief continuance due to a conflict. The hearing was then reset for May 17, 2018.

On May 3, 2018, Mr. Collins requested a continuance so he could subpoena witnesses. The Government objected and moved to strike Collins's pleading. On May 14, 2018, Collins filed a motion to reschedule the evidentiary hearing in order to allow for sufficient time to request time off from work. The Court granted the motion and continued the hearing to June 14, 2018. The Government objected to some of Collins's witnesses, including the then-United States Attorney. The hearing was continued to June 28, 2018, to enable Collins to respond to the Government's motion.

On June 19, 2018, Mr. Collins filed another motion to continue. The Court noted that Collins did not receive the Government's pleadings or Court's Orders until a few days after docketing. The hearing was continued to July 19, 2018 to allow Collins to respond to the Government's pleadings.

On July 5, 2018, Mr. Collins filed a motion to reschedule the evidentiary hearing and another motion to supplement his position statement. The Court continued the hearing to July 20, 2018, because Collins was not scheduled to work on that day.

On July 16, 2018, over the Government's objection, the Court entered an Order allowing Mr. Collins to call a number of witnesses at the evidentiary hearing,

including (1) Steven R. Jennings, a real estate appraiser; (2) Ray Durston, the Supervisor of Assessments and Chief County Assessment Officer for Montgomery County; (3) Sandy Leitheiser, the Montgomery County Clerk and Recorder; (4) Leon Green, the Montgomery County North Litchfield Township Assessor; and (5) Scott Anderson, an FBI agent who Collins alleged found a copy of the original quitclaim deed when searching the property.

On July 17, 2018, Collins filed another motion to continue. On July 18, 2018, the Court granted the motion in order to give Collins an opportunity to present witnesses and testimony and any other admissible relevant evidence. The Court canceled the July 20 hearing and directed the Parties to confer and agree on potential dates for an evidentiary hearing within 60 days or less.

On July 20, 2018, the Government filed a Notice of Available Hearing Dates. Counsel for the Government stated she had called Mr. Collins's listed phone number a total of four times over the course of July 18-19, 2018. Collins failed to answer but counsel left a message each time stating that the Court had granted his motion to continue and Collins should contact the United States Attorneys' Office to confer on a hearing date. Counsel contacted three of Collins's witnesses regarding their availability and listed several available dates.

On July 27, 2018, the Court set the evidentiary hearing for September 12, 2018. The Court also set aside the afternoons of September 13 and 14, 2018 for the hearing.

On July 30, 2018, Collins filed a response to the Government's Notice of Available Hearing Dates. In a letter to counsel for the Government, Collins stated he would be prepared to confer by letter with the Government when he received the Court's July 18, 2018 Text Order. Collins suggested holding the hearing on September 20, 21, 26 or 27, 2018. Upon reviewing Collins's filing, the Court noted that September 21, 2018 was a mutually agreeable date and set the hearing for that date.

On September 19, 2018, Mr. Collins requested that the evidentiary hearing be rescheduled because "he was in no condition to attend." The same day, the Court denied the motion to continue, stating in a Text Order: "It has been thirteen months since the Government presented evidence. There have been a number of continuances for various reasons. At some point, the case needs to move forward. If the Third Party Respondent is unable to be physically present, he may appear by telephone and the Parties can discuss how to proceed." According to a September 19, 2018 "Clerk's Note" entry on the docket, the Clerk contacted Mr. Collins regarding the Text Order. Collins "advised that he will not be able to be present in person or by telephone as he is physically and mentally not capable of doing so."

He stated he was on medication which affected his ability to proceed.  The Clerk's Note concluded, "He reiterated several times that he has been stalked and injured and is not in a position to proceed even telephonically at this time."

On September 21, 2018, the Government appeared for the scheduled hearing. Before the Court took the bench, the Clerk tried to contact Mr. Collins three times, leaving a detailed voicemail message on two of the phone calls.  She called at 2:00 p.m., 2:10 p.m. and at 2:33 p.m.  The Court ordered the Clerk to call Collins's phone number again.  Collins never answered and the Clerk was unable to leave a message.

At the September 21, 2018 hearing, the Government noted that both parties were to have presented evidence on August 22, 2017, but Collins was granted a continuance so he could seek to obtain counsel.  It had been 13 months since the Government presented evidence.  The Government further stated that Collins had not described the exact nature of his injuries and had failed to provide a doctor's medical statement.  The Court ordered the Government to provide a summary of the evidence and to include a review of the various continuances.

On September 24, 2018, Mr. Collins filed a motion to reschedule the evidentiary hearing and a declaration.  Collins stated he had been attacked by three or four individuals on September 11, 2018.  One of those individuals claimed to be a victim of Defendant Paul Kincaid.  Collins sought medical treatment and was

prescribed Lorazepam, in addition to the three prescribed medications he was already taking.

On September 27, 2018, the Court denied Collins's motion to reschedule the evidentiary hearing and stated that the Parties may file summaries of the evidence by October 19, 2018.

On October 10, 2018, Mr. Collins filed a response to the Court's September 27, 2018 Opinion. Collins also filed a declaration.

On October 15, 2018, Mr. Collins filed a motion for extension of time in which to file a summary of the evidence. The motion was granted and the Petitioner was given until November 5, 2018 to file his summary of evidence.

On October 19, 2018, the Government filed its Evidentiary Summary and Proposed Conclusions.

On November 6, 2018, Mr. Collins filed his Summary of the Evidence. He also moved for leave to file a response to the Government's Evidentiary Summary and Proposed Conclusions.

On November 14, 2018, the Court granted Collins's motion to file a response. The Court also granted leave to the Government to respond to Collins's Summary of the Evidence. The Court stated any filings shall be limited to 15 pages. Neither party filed a response.

On December 7, 2018, Mr. Collins filed a motion for leave to supplement his position statement. The Court denied the motion.

## III. DISCUSSION

In seeking a Turnover Order, the Government relies on the Federal Debt Collection Procedure Act, 28 U.S.C. § 3304(b), which provides that a fraudulent transfer is one made "without receiving a reasonably equivalent value in exchange" when the transferor "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 28 U.S.C. § 3304(b)(1)(B)(ii).

Section 3304(b)(2) provides:

"In determining actual intent under paragraph (1), consideration may be given, among other factors, to whether—
(A) the transfer or obligation was to an insider; . . .
(C) the transfer or obligation was disclosed or concealed;
(D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(E) the transfer was of not substantially all the debtor's assets; . . .
(I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(J) the transfer occurred shortly before or shortly after a substantial debt was incurred; . . . .

28 U.S.C. § 3304(b).

The Government sought a Turnover Order pursuant to 28 U.S.C. § 3304(b) and argued that Kincaid had transferred his interest in the property at 502 E. Union, Litchfield, Illinois, for less than its value. The Government argued that the value of

the property was $125,000. Therefore, Kincaid's one-half interest was worth $62,500 and, because Kincaid transferred his interest to Collins for only $40,000, the Government sought $22,500 from Collins. *See Kincaid*, 681 F. App'x at 500.

At his deposition, Mr. Collins testified he and Kincaid moved together from Michigan to Illinois in approximately 1979. Kincaid and Collins started and operated two businesses together. The first went out of business in 1998. Collins testified the second was a partnership known as the "Hair Clinic," which began in 1979.

On August 7, 1979, Collins and Kincaid acquired 502 E. Union Avenue, Litchfield, Illinois, and mortgaged the property to the First National Bank of Litchfield. Collins testified the property was held in joint tenancy with full rights of survivorship. Collins testified that he bought out Kincaid's interest in the property for $15,000 in 1995, which, he said, reflected Kincaid's twenty percent interest in the property per their agreement. On September 14, 2006, Kincaid quit claimed his interest in the property to Collins. Mr. Collins described this as a "redundant instrument of conveyance for the purposes of having a document to file an updated document." *See* Doc. No. 193-28 at 38.

The 502 E. Union property was also the location of the Hair Clinic that was owned and operated by Kincaid and Collins. The deed for the property bore both their names with a legal description of:

All lots of twenty-six (26) and twenty-seven (27), the west ninety-six (96) feet of lot twenty-five (25) and west nine (9) feet of lot twenty-eight, all in Litchfield's subdivision of Church and School House Square in Block sixty-eight (68) in the addition to the town, now city, of Litchfield, as platted by P.C. Huggins, situated in the City of Litchfield, in Montgomery County, Illinois.

According to recorded documents at the Montgomery County Recorder's Office ("Recorder's Office"), from 1979 through its final release in 1999, Collins and Kincaid together obtained a number of loans using the property they owned together in joint tenancy as collateral. The last mortgage loan on file at the Recorder's Office was obtained by both Kincaid and Collins from Carlinville National Bank on October 2, 1991 and was released on December 1, 1999. The 1991 mortgage included the same legal description of the property as that on the original deed filed in 1979.

As noted above Mr. Collins claims that, in 1995, Kincaid quit claimed his interest in 502 E. Union to Collins in exchange for $15,000. The deed was not notarized and was never recorded at the Recorder's Office. The Montgomery County Recorder, Sandy Leitheiser, reviewed the quitclaim deed produced by Collins and stated in her Declaration that the quitclaim deed:

> . . . is not notarized, does not include a Plat Act Affidavit, fails to state to whom the tax bill should be sent and at what address, and does not indicate who prepared the Quit Claim Deed. Further, it includes two physical addresses for the referenced property, but has a single parcel ID number and legal description. I also note that the legal description is incomplete and the document has neither a PTAX Form nor an Exempt Stamp which is required by the Illinois Department of Revenue and

necessary for county property tax assessment purposes.

Doc. No. 206-1.  Ms. Leitheiser explained she or her staff would have pointed out these problems and, if the individual insisted that the document be filed, she would have noted the problems and contacted the Montgomery County State's Attorney's Office for guidance.  *Id.*

While Kincaid ostensibly quitclaimed the real estate to Collins in 1995, the certified warranty deed shows that Kincaid remained responsible to repay the Carlinville National Bank on the 1991 mortgage loan, which was not released until 1999.

Paul Kincaid was arrested on or about September 6, 2006.  In 2006, the house was mortgaged as security for payment to Kincaid's attorneys, Jon Gray Noll and Andrew Scharf.

Following Kincaid's arrest, at a September 7, 2006 initial appearance regarding his financial status for purposes of appointment of counsel, Kincaid stated under oath that he and his partner owned a house together "outright."  Doc. No. 193-30, at 4-5.  The magistrate judge explained to Kincaid that his ownership of real estate worked against him with respect to appointment of counsel.  Soon thereafter, Kincaid inquired of the Court whether it would make a difference if the property were not "half mine."  When Kincaid stated he believed the property was held as a joint tenancy with Collins, the Court reiterated that worked against him.  *See id.* at

7-8. When Kincaid estimated the value of such property was "$175,000," the Court explained that based on that estimate of the value of the real estate, Kincaid did not qualify for appointed counsel. *See id*. at 8-9.

The estimate of the real estate value offered by Kincaid was far more than the tax assessed value. At his initial appearance, Kincaid explained that he owed approximately $50,000 to Collins, but never stated that he had quitclaimed the real estate to Collins or that his own name had been removed from the title.

At the September 7, 2006 initial appearance, the attorney for the Government informed the Court and Kincaid of the possible penalties for both statutes under which Kincaid was charged. The Government also stated that it was considering forfeiting the real property.

On September 14, 2006, both Collins and Kincaid signed the mortgage that bore the following statement: ". . . Borrower [Collins and Kincaid] is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property. . ." Doc. No. 193-21.

On October 6, 2006, a quitclaim deed by which the property was transferred from Kincaid to Collins and a mortgage of that property were filed with the Montgomery County Clerk. The mortgage was signed by both Kincaid and Collins; the real estate at 502 E. Union, Litchfield, Illinois, was security for a $40,000 promissory note payable to attorneys Jon Gray Noll and Andrew Scharf and stated

that the borrowers [Collins and Kincaid] were "lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the property." Doc. No. 193-1, at 65, 70-72.

On October 24, 2006, Mr. Collins signed documents for an $80,000 mortgage loan from American Home Mortgage, using the real estate at 502 E. Union, Litchfield, Illinois as collateral. The mortgage was filed with the recorder on October 31, 2006. Collins testified that he gave approximately $40,000 of the loan money to Kincaid for his criminal case and Collins kept the remainder of the loan funds.

When Collins filed his motion to dismiss [Doc. No. 95], he provided a 2006 letter from American Home Mortgage, which informed him that the real estate had been appraised at $125,000. Steven Jennings performed the appraisal for American Home Mortgage and explained his methodology. *See* Doc. No. 193-27. Jennings explained that he always reviewed documents available in the county assessor's office, considered the purchase price of similar listings on "both the local Multiple Listing Service ('MLS') and . . . any similar residences that have sold 'by owner' if the information was available through county records." *Id*. He also accounted for the condition of the residence, both inside and outside, considered gross living area, home improvements, presence of a garage, deck, carport, swimming pool, the general quality of construction, and other factors. *Id*. In the Appraisal Report,

Jennings noted that Collins refused to allow him to go to the second floor of the house.

Upon considering his methodology, Jennings appraised 502 E. Union, Litchfield, Illinois at $125,000. Mr. Collins disputes that amount as the fair market value, citing Montgomery County tax assessment records.

Ray Durston, Montgomery County, Illinois Chief County Assessment Officer, stated he had been in that position since 2008 and explained that an appraisal was generally a more reliable method of valuing real estate than the county tax assessment records. *See* Doc. No. 193-25. Durston stated that, in Illinois, a tax assessment is 33 1/3 percent of the real estate's fair market value but, because the assessed value often lags behind the fair market value, an appraisal produced by a professional licensed appraiser would provide a more accurate determination of the fair market value than the assessed value. *Id*. Durston reviewed the 2006 Montgomery County Parcel Information Report for 502 E. Union, Litchfield, Illinois, which was issued in 2007. It showed the equalized value of the property as $29,588. When multiplied by 3, this report established the fair market value of $88,674. Durston emphasized the equalized value lags behind the actual fair market value.

# IV. CONCLUSIONS

The Court has reviewed all of the documents in this case. As the earlier recitation of the procedural history makes clear, Mr. Collins has had numerous opportunities to present his evidence.

The Court finds as follows:

1. Steven R. Collins was a licensed real estate agent from approximately 1996 through 2005 and, therefore, should have had substantial knowledge of real estate, titles and related terminology. He had worked for Century 21, Simpson Realty, Litchfield, Illinois.

2. Based upon his background, Mr. Collins had reason to know (at least in the ten years prior to Kincaid's arrest) that joint tenancy was recognized in Illinois but real estate could not be titled so one party had only a 20% interest.

3. The deed to the property in question showed that Kincaid and Collins held the real estate in joint tenancy from the date they purchased it in 1979 until a quitclaim deed was filed with the Montgomery County Recorder on October 6, 2006. Collins testified that Kincaid quitclaimed his interest in 502 E. Union Avenue to Collins in exchange for $15,000.

4. Collins and Kincaid obtained mortgage loans, extensions, or modifications of mortgage loans on the real estate in question beginning in 1979 until the final release of such mortgage in 1999. Both Kincaid and Collins were listed together as

borrowers on both the 1979 title and on subsequent mortgage loans on the property. Those documents included the signatures of both Kincaid and Collins and were recorded with the Montgomery County Recorder of Deed's Office. A total of fourteen documents were signed by Kincaid and Collins as owners of the property.

5. Based upon his real estate background, Collins had reason to know that a quitclaim deed that was not witnessed, notarized, failed to comport with county requirements, and was not properly filed with the County Recorder would not be valid or recognized by anyone other than the signers of such quitclaim deed.

6. Mr. Collins similarly had reason to know that the mortgage loan that was obtained in 1991 and not released until 1999 was on the very same property that Kincaid quitclaimed to him in 1995, as it referenced Lot 25, Lot 26 and 502 E. Union Ave., Litchfield, Illinois. The 1995 Quitclaim Deed was never notarized and never recorded.

7. Despite the fact that Kincaid purportedly quitclaimed the real estate to Collins in 1995, both Kincaid and Collins signed the mortgage to defense attorneys Jon Gray Noll and Andrew Scharf in October 2006. The 2006 mortgage document states that Kincaid and Collins, as the borrowers, were both "lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the property. . . ."

8. If Kincaid had truly quitclaimed the real estate to Collins in 1995, he would

not be in position to convey and mortgage the real estate a second time in 2006.

9.  Although Collins had a background in real estate, it appears he allowed Kincaid to remain responsible to Carlinville National Bank on a mortgage loan for property Kincaid no longer owned after 1995, if the 1995 quitclaim is true and accurate.  The alternative explanation is that the 1995 quitclaim deed has numerous defects and is invalid.

10. Montgomery County Recorder Sandy Leitheiser sets forth a number of reasons to question the legitimacy of the 1995 quitclaim deed.  Moreover, Kincaid never informed the Court in 2006 that he no longer had title to the property.  It would have been in his interest to say that he no longer had title to the property, given that he was seeking Court-appointed counsel.  However, Kincaid stated both his and Collins's names were on the title to the property.

11. The Court concludes that the 1995 quitclaim deed is ineffective against other creditors, including the United States.

12. Kincaid's answers to the Court's questions on September 7, 2006 were direct and responsive.  He stated he and Collins owned a house and business together.  Kincaid clearly stated that the title to the real estate was in the names of both Paul E. Kincaid and Steven R. Collins.  Kincaid specifically asked whether it would make a difference whether he had an interest in 502 E. Union.  When the

Court inquired if the two men held the property in joint tenancy, Kincaid made a direct affirmative answer.

13. Kincaid stated that he owned the property "outright," meaning that there were no mortgage loans against it. Kincaid did not say anything about quitclaiming his interest in 502 E. Union in 1995.

14. At his court appearance on September 7, 2006, Kincaid informed the Court that he had a bachelor's degree in foreign languages. Based upon Kincaid's college education and his responsive dialogue with the Court on September 7, 2006, the Court concludes that he understood the questions he was asked and also understood the status of the real estate ownership of 502 E. Union, Litchfield, Illinois, on September 7, 2006. Kincaid obviously understood the implications of his 50% ownership in the real estate in question and of the high monetary value placed upon that real estate.

15. Kincaid estimated the value of the real estate to be $175,000 at his initial Appearance on September 7, 2006.

16. The Government did not state that Kincaid might be responsible for restitution. However, when the Assistant United States Attorney stated the possible fine and special assessment for the crimes for which Kincaid had been indicted and also stated that the Government was considering forfeiting Kincaid's property, Kincaid had reason to believe he would incur debts beyond his ability to pay.

Moreover, Kincaid had been told the value of the house prevented him from qualifying for appointed counsel.

17. American Home Mortgage obtained an appraisal of the property at 502 E. Union before it agreed to the $80,000 mortgage loan to Collins.

18. The 2006 appraisal of the property at 502 E. Union, Litchfield, Illinois appears to have been complete and thorough. Appraiser Steven Jennings provided a complete explanation of his methodology and evaluation.

19. Jennings's valuation of the real estate was based upon a thorough appraisal document, accepted by American Home Mortgage, and it established the 2006 property value at $125,000.

20. Mr. Collins's attached as an exhibit to his Position Paper a retrospective appraisal of 502 East Union. The retrospective appraisal, which was conducted in March 2012, states that the September 20, 2006 real estate value is $86,400. In describing the scope of work, the appraiser states "I am making an extraordinary assumption that the condition of the property reflects the retrospective date of appraisal." Doc. No 219-19, at 4. The Court concludes that the 2012 appraiser could not have known the property's condition in 2006. Accordingly, the Court is unable to conclude that the retrospective appraisal is accurate.

21. Montgomery County Chief County Assessment Officer Ray Durston established the tax assessed value of the property as $88,000 in 2006 but explained

that the assessed value often lagged behind the fair market value. A complete appraisal was usually more reliable.

22. Based on his extensive experience as Montgomery County's Chief Assessment Officer, Durston's opinion that tax assessed value is less reliable than appraised value carries significant weight.

23. The most reliable value determination of the real estate in question is that set forth in the appraisal of $125,000, upon which American Home Mortgage relied. In 2006, Mr. Collins signed the application on which he estimated that the house value was $125,000.

24. Kincaid signed a quitclaim deed to Collins a mere seven days after his September 7, 2006 appearance, after learning of the potential financial penalties associated with the crimes with which he was charged. Kincaid signed the quitclaim deed, despite the fact that Collins claimed Kincaid did not own the property as he had previously quitclaimed his interest in the property.

25. The mortgage loan of $80,000 that Collins obtained for the property provided Kincaid with $40,000. Those funds were then paid to Kincaid's attorneys. *See Kincaid*, 681 F. App'x at 500. At the time, it was not certain that $40,000 would be necessary to Kincaid's defense.

26. Kincaid held a 50% interest in the real estate ($62,500) until he quitclaimed his interest to Collins one week after this federal case commenced.

Collins owes the balance of Kincaid's 50% interest to the United States. He owes an additional $22,500 to the United States.

27.     The Court allowed Mr. Collins no less than eleven continuances, so he had several opportunities to present evidence to the Court. After the initial hearing at which the Government presented evidence on August 22, 2017, Collins was granted a continuance so that he could attempt to obtain counsel. Collins was also granted extensions to provide "documentary evidence" which he claimed "significantly corroborates" his position regarding the fair market value of 502 E. Union, Litchfield, Illinois. Collins was granted extensions so that he could subpoena witnesses.

28.     Thirteen months after the hearing on August 22, 2017, Collins failed to appear in person or by telephone on September 21, 2018. Collins stated that a few days earlier, he had been stalked and/or assaulted by "thugs" who may have been victims of Paul Kincaid. As a result, he was unable to appear in person or telephonically. The Court denied Collins's motion to reschedule the evidentiary hearing and scheduled deadlines to file Summaries of the Evidence.

29.     The record establishes there was a special relationship between Kincaid and Collins. The financial, personal and legal aspects of the lives of Kincaid and Collins were intertwined.

30.    There was a disparity between the value of the property transferred and the consideration received.  Kincaid transferred his 50% ownership interest in 502 E. Union to Collins for $40,000, or $22,500 less than the value of his ownership interest.

31.    The Court concludes that Kincaid transferred his interest in 502 E. Union with the intent to defraud a creditor and Kincaid did not obtain reasonably equivalent value or the remainder of the refinancing.  *See* 28 U.S.C. § 3304.

## V. SUMMATION

Based on the foregoing, Mr. Collins had an opportunity to be heard and present evidence at the August 22, 2017 hearing.  He was granted a number of continuances over the next thirteen months.  The Court entered an Order allowing Collins to call as witnesses the individuals cited by the Government in support of its position.  The Court concludes Collins was afforded ample opportunity to subpoena witnesses and adduce evidence.

The record establishes that the 1995 quitclaim deed is invalid because it was not recorded.  Kincaid and Collins owned the property as joint tenants until September 14, 2006 when, according to certified records from the Montgomery County Clerk, Kincaid quit claimed his interest in the property at 502 E. Union to Collins for $40,000.  Because the property was worth $125,000 at the time, Kincaid's one-half interest is valued at $62,500.  Kincaid made the transfer "without

receiving a reasonably equivalent value in exchange." At the time of the 2006 quitclaim deed, Kincaid was aware that he would likely incur debts beyond his ability to pay.

Accordingly, the Court concludes that pursuant to 28 U.S.C. § 3304(b), Kincaid fraudulently transferred his interest in 502 E. Union with intent to delay a creditor without receiving reasonably equivalent value in exchange. Pursuant to 28 U.S.C. § 3306(a)(1), the United States may obtain avoidance of that transfer.

Ergo, Third Party Respondent Steven R. Collins is DIRECTED to turn over to the United States the sum of $22,500.00, which represents Defendant Paul Kincaid's one-half interest in 502 E. Union, Litchfield, Illinois, i.e., $62,500 minus a $40,000 loan used to pay attorney's fees, which is avoided as a fraudulent transfer pursuant to 28 U.S.C. §§ 3304(b)(1)(B) and 3306(a)(1).

In order to satisfy part of Defendant Kincaid's restitution debt, Third Party Respondent Steven R. Collins shall turn over $22,500.00 to the United States within 30 days of the entry of this Opinion and Order.

The Clerk will terminate any pending motions.

The Clerk will send a copy of this Opinion and Order to Third Party Respondent Steven R. Collins.

ENTER: July 16, 2019

FOR THE COURT:

<u>/s/ *Richard Mills*</u>
Richard Mills
United States District Judge