E-FILED
Wednesday, 15 April, 2020  03:15:54 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-30073 |
| | ) | |
| PAUL KINCAID, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, United States District Judge:

The Defendant seeks Compassionate Release/Reduction in Sentence under 18 U.S.C. § 3582.

## I.

In 2006, Defendant Paul Kincaid was charged with production (Count I) and possession of child pornography (Count II), in violation of 18 U.S.C. §§ 2251(a) and 2251A(a)(5).  In 2007, he was found guilty of both counts following a stipulated bench trial before United States District Judge Jeanne Scott.  On April 15, 2008, Judge Scott sentenced the Defendant to 360 months imprisonment on Count I and 120 months on Count II, to be served concurrently.  The Defendant has been incarcerated since his arrest on September 6, 2006.

Since the December 2018 passage of the First Step Act, defendants may now bring their motions for compassionate release after exhausting administrative remedies within the Bureau of Prisons ("BOP").  *See* 18 U.S.C. § 3582(c)(1)(A).  A defendant may be eligible for compassionate release: (1) if the Court funds "extraordinary or compelling reasons" to warrant a sentence reduction; or (2) if the defendant is at least 70 years old, has served at least 30 years in prison pursuant to a sentence imposed for the offense for which the defendant is currently imprisoned, and the defendant is determined to not pose a risk of danger to the community.  *See* 18 U.S.C. § 3582(c)(1)(A).  Under either prong, the Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A).   The applicable guideline instructs that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act.  *See* U.S.S.G. § 1B1.13.

The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the Sentencing Commission's policy statements when deciding compassionate release motions.  *See* 18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's policy statement on sentence reduction mirrors the language of the

compassionate release statute but has not yet been updated to reflect the procedural changes implemented by the First Step Act.  U.S.S.G. § 1B.13.  The sentence reduction policy statement outlines four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction: (1) the defendant suffers from a medical condition that is terminal or substantially diminishes the defendant's ability to provide self-care in a correctional environment; (2) the defendant is at least 65 years old, is experiencing a serious deterioration in health due to the aging process, and has served at least 10 years or 75% of his or her term of imprisonment; (3) family circumstances involving the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner; or (4) other reasons, other than or in combination with the other listed circumstances, are extraordinary or compelling.  U.S.S.G. § 1B1.13, Application Note 1.

Mr. Kincaid states that after he was transferred to FMC Butner, North Carolina in October 2019, he was diagnosed with stage 4 lung, brain and kidney cancers and given a terminal prognosis.  He is now housed in the hospice unit.  He is wheelchair-bound and relies on oxygen for portions of the day.  The Defendant further states he has lost 55 pounds since October 2019.  Mr. Kincaid's motion provides that his significant weight loss is evidence that he is starving to death.  A Joint Declaration from Mr. Kincaid's sisters references his severe weight loss and

provides that he is not able to eat most of the food that is served to him at FMC Butner due to the extreme nausea and vomiting that results. Mr. Kincaid has not been provided food he might be able to tolerate such as tomato soup. He has been given two or three Ensures per day. Mr. Kincaid claims that the "Institutionalized Prison Hospice" does not provide any enjoyment or peace in his final days.

The Government notes it has reviewed a "terminal relocation release plan" it received from representatives of BOP dated October 31, 2019. The report provides that Defendant has been diagnosed with Stage IV non-small cell lung cancer and renal cell carcinoma with suspected brain metastases and was given a prognosis of 3 months. The Government acknowledges Mr. Kincaid "suffers from a medical condition that is terminal or substantially diminishes the defendant's ability to provide self-care in a correctional environment." U.S.S.G. § 1B1.13, Application Note 1. On March 17, 2020, the Government was informed that BOP had rejected Mr. Kincaid's application for release. Accordingly, he has exhausted his administrative remedies and the matter is properly before the Court for consideration. Mr. Kincaid's motion provides that the home of one of his sisters has been approved as a release residence.

II.

The Court will consider the sentencing factors under 18 U.S.C. § 3553(a) in determining whether the Defendant is entitled to a compassionate release.  At trial, the Parties stipulated that witnesses could testify that Defendant "had photo albums full of Polaroid pictures depicting people engaged in sexual activity that he had taken over an extended period of time and that some of those pictures depicted 'kids.'" Most of Mr. Kincaid's victims were young males.  During his interview with case agents, the Defendant discussed his creation of child pornography and his sexual contact with minor males over a five-decade period—spanning the 1960's, 1970's, 1980's, 1990's and 2000's.  Mr. Kincaid was able to recall various details of his actions.  Many times, he offered the victims money to perform sex acts, to allow photographs of them or so that they would remain silent regarding the Defendant's actions.  The creation of child pornography and his sexual contact with the victims was done for Mr. Kincaid's sexual gratification and amusement.  The Government notes that Defendant committed these offenses while posing as a respected member of the community and the church, using that guise while gaining the trust of the victim children and their parents.

The Court has reviewed the Declarations from Mr. Kincaid's four sisters in support of his motion for compassionate release.

The Court has also reviewed the PSR and letters submitted from victims at the time of sentencing, in addition to the letters submitted in conjunction with the Defendant's motion for compassionate release.  As the Government notes, these were very serious offenses wherein the Defendant ruined the lives of many young boys and girls, in addition to those of their friends and families in some cases.  A parent of one of the victims stated, "[T]here are no words to tell you the heartache, anguish, and pain my family has gone through because of Paul Kincaid's predatory actions to our child."  In a letter referenced in the 2008 Presentence Investigation Report, a victim wrote that "I don't trust anybody any more."  Another individual wrote, "My life has been a living hell since he first molested me."

Another factor for the Court's consideration is to afford adequate deterrence to criminal conduct.  The Defendant obviously has a sexual interest in teenaged children which he acted on over the course of at least 40 years.  However, the Defendant's medical status and perhaps his age would likely deter him from committing those or similar acts if he were to be released.

Another consideration is to protect the public from further crimes of the Defendant.  The Government acknowledges that the Defendant's current health issues may prevent him from committing further crimes, while noting his release would reopen wounds suffered by members of the community.

Another factor to consider is the need to provide the Defendant with needed educational or vocational training, medical care or other corrective treatment.  Mr. Kincaid seeks palliative care being surrounded by family members in his remaining days.  The Government notes that he is currently provided with medical care.  While he now seeks the mercy of the Court, the Government claims Mr. Kincaid has taken no steps in the last 14 years towards expressing remorse for the harm he caused.

An additional sentencing factor involves the need to provide restitution to any victims.  At sentencing, the Defendant was ordered to pay $60,000 restitution to certain victims.  The Government claims that, in response to this Order, he took a series of actions to divest himself of any assets and to provide for the welfare of his housemate, Steven Collins.  The Court is familiar with those efforts which are part of this case.  The Government claims Mr. Kincaid's actions demonstrate the utter disregard he has for the victims of his offense.  The Defendant's motion provides that he has paid $1,500 in restitution in the twelve years since his conviction, or 2.5% of his obligation.

The Government acknowledges that Mr. Kincaid certainly suffers from a terminal medical condition.  However, Mr. Kincaid made the lives of dozens of children a nightmare from which they have never recovered.  Most of the victims do not seek to give him any comfort at their expense.  The Government states that his release would be at the expense of these victims.  Moreover, allowing his release

7

into the community would cause unnecessary additional pain to those who have suffered so much.  While sympathizing with Mr. Kincaid's medical condition, the Government strongly objects to his release.

The Court has reviewed several letters from victims and/or family or friends of victims in opposition to Mr. Kincaid's motion.  Most of the letters were submitted when the matter was pending before BOP.  One letter received by the Court from a mother of one of Mr. Kincaid's victims supports Mr. Kincaid's motion for compassionate release.   The letter writer believes Mr. Kincaid should be immediately released to his sister and family due to his terminal medical condition. The Court certainly recognizes that reasonable people can disagree as to the appropriate disposition of Mr. Kincaid's motion for compassionate release.

It is worth noting that Mr. Kincaid's advisory sentencing guideline range would have been life imprisonment were it not for a 30-year statutory maximum.  As Judge Scott recognized in imposing a 30-year sentence, the criminal conduct in this case was particularly troubling.  When Mr. Kincaid was arrested, agents found more than 600 images of child pornography that he had produced and stored at home.  Mr. Kincaid personally shot most of the photos using a Polaroid camera.

The record shows that Defendant was victimizing children when he was in his 20's and, as this case shows, he was still victimizing children when he was in his

mid-60's.  He obviously exerted a significant amount of control over these child victims in order to avoid detection for so long in and around Litchfield, Illinois.  Mr. Kincaid did this at various stages of his life: while employed as a teacher, during the time he was a Sunday school teacher and Elder in the Union Avenue Christian Church (Disciples of Christ) and during the time he was a businessman and hair stylist.  It appears he used these positions as a platform to prey on children he believed to be vulnerable.  One child victim stated Mr. Kincaid "used the Bible to justify" molesting him.  Another victim killed himself soon after agents discovered Mr. Kincaid's pictures and the victim was interviewed by law enforcement.

The Defendant was 67-years old at the time he was sentenced.  He had been in custody since he was 65.  In determining that a 30-year sentence was appropriate, Judge Scott obviously was aware that it was quite possible, if not likely, that Defendant would die in prison.  While there is no question that Defendant is eligible to seek compassionate release, the Court does not believe that is appropriate in this case after considering all of these factors.

The Defendant's criminal conduct occurred over decades.  Some of the letters suggest that certain victims continue to feel the effects of Mr. Kincaid's crimes.  The nature and circumstances of the offense and history and characteristics of the Defendant weigh in favor of denying the motion.  The same is true when the

seriousness of the offense is considered, along with sentencing factors such as promoting respect for the law and providing just punishment.

The Court certainly sympathizes with the Defendant because of his medical prognosis. Moreover, the Court understands the desire of the Defendant's sisters and family to provide comfort and spend time with him in his final days. However, the Defendant has taken almost no steps towards attempting to make restitution to his victims. Rather, he sought to divest himself of any assets and sought to provide for the welfare of his housemate, Steven Collins.

He has not expressed remorse for his actions or said anything about the victims of the offenses. The Government points out that the choices we make during our lifetimes will sometimes make it difficult in the end. For all of these reasons and because of the seriousness of the offenses and the amount of time over which Mr. Kincaid's crimes occurred, the Court does not believe that compassionate release is warranted.

### III.

After reviewing the Defendant's motion, Government's response and other pertinent pleadings, the Court received the Defendant's motion for appointment of counsel. The Court believes that the Defendant's arguments were adequately

presented in his motion for compassionate release and other filings and appointment of counsel is not necessary.

Ergo, the Defendant's Motion for Compassionate Release/Reduction in Sentence [d/e 306] is DENIED.

The Defendant's Motions for the Appointment of Counsel [d/e 313, 314] are DENIED.

ENTER: April 15, 2020

FOR THE COURT:

/s/ *Richard Mills*

Richard Mills
United States District Judge